# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Janish,<br><br>          Plaintiff,<br><br>v.<br><br>Metropolitan Council; and Joan Hollick<br>(in her individual capacity),<br><br>          Defendants. | Case No.: 0:23-cv-03675-JWB-DTS<br><br>**DEFENDANTS METROPOLITAN COUNCIL AND JOAN HOLLICK'S ANSWER TO COMPLAINT** |

Defendants Metropolitan Council ("the Council") and Joan Hollick, in her individual capacity (together "Defendants"), for their answer to the Complaint of Plaintiff Michael Janish ("Plaintiff"), state that except as hereinafter expressly admitted, qualified, or otherwise answered, they deny each and every allegation in Plaintiff's Complaint.

Defendants further state as follows:

## INTRODUCTION

In response to the allegations contained in the unnumbered paragraphs of the Complaint under "Introduction," Defendants emphatically and categorically deny Plaintiff's factual allegations, characterizations, and legal claims regarding the Southwest Light Rail Transit Project ("SWLRT Project" or "Project").[1] The Council and its employees, including Hollick, consistently managed this highly complex Project in

---

[1] For purposes of this Answer, the Council uses Plaintiff's terminology, which refers to the METRO Green Line Extension Project as the "Southwest Light Rail Transit Project."

compliance with all applicable laws and regulations and ensured the efficient use of public resources.

Due to late-added changes to the Project and factors outside the Council's control—most notably, unforeseen site conditions and flaws in the Project's initial design—the Project's scope has changed significantly since the civil construction contract for the Project was competitively bid, resulting in a significant number of "change orders," or proposals for changes to the Project's scope. To maximize efficiency and minimize waste, the Council implemented an industry-standard process for reviewing, evaluating, and approving change orders consistent with the civil construction contract for the Project and all applicable laws.

Plaintiff Michael Janish is a current Council employee who previously worked on the Project. Plaintiff's job responsibilities on the Project included working on the change order process for a relatively small number of individual change orders. After months of incomplete and untimely work, Plaintiff eventually refused to perform this work altogether and expressed his disagreement with the Council's established change order review process. Plaintiff's manager attempted repeatedly to explain the change order process to Plaintiff to allay and resolve his concerns. Although Plaintiff's objections to that process reflected a fundamental misunderstanding of applicable law and industry practice, the Council's auditors and Regional Administrator sought to understand and investigate Plaintiff's concerns. But Plaintiff refused to respond to requests for additional information.

Now, Plaintiff has filed a Complaint that parrots arguments in publicly available documents from the Council's Engineer of Record and former cost-estimating consultant

relating to a highly publicized dispute over the change order and cost estimating process. Many of Plaintiff's allegations focus on change orders mentioned in this dispute as to which Plaintiff neither had personal responsibility nor complained. In fact, the change orders for which Plaintiff was responsible account for less than 0.1% of the total increased costs for the Project.

Rather than terminating Plaintiff for refusing to perform his job duties, the Council transferred Plaintiff to a comparable position on a different light rail project that would not require him to engage in the activities he had expressed concerns about. The position was a lateral transfer with the opportunity for future growth and no decrease in compensation or benefits. Far from retaliating against Plaintiff for protected speech or good faith reports of "unlawful activity," the Council made substantial efforts to address Plaintiff's concerns and retain him in a position he could perform without objection.

## DEFENDANTS' RESPONSES TO NUMBERED PARAGRAPHS[2]

1.      Defendants admit the allegations in paragraph 1 of the Complaint.

2.      Defendants admit the allegations in paragraph 2 of the Complaint.

3.      Defendants admit the allegations in paragraph 3 of the Complaint.

4.      In response to the allegations in paragraph 4 of the Complaint, Defendants state that they are subject to personal jurisdiction in this Court.

---

[2] Defendants do not address the unnumbered headings that appear throughout the Complaint, which contain characterizations of alleged facts but no unique factual allegations.

5.      In response to the allegations in paragraph 5 of the Complaint, Defendants admit that the Fourth Judicial District Court in Hennepin County, Minnesota had original subject-matter jurisdiction over this action and further state that Defendants properly removed the action to this Court under 28 U.S.C. § 1441.

6.      In response to the allegations in paragraph 6 of the Complaint, Defendants state that venue is proper in this Court.

7.      In response to the allegations in paragraph 7 of the Complaint, Defendants state that the allegations regarding Plaintiff's educational history, license, and certifications are consistent with Plaintiff's past representations to the Council.  Defendants deny the remaining allegations in paragraph 7 to the extent they provide subjective characterizations of Plaintiff's professional performance.

8.      In response to the allegations in paragraph 8 of the Complaint, Defendants admit that Plaintiff has more than twenty years of experience in the public and private sectors and has worked on public-works projects.  The allegation that Plaintiff has worked on "numerous high-profile public-works projects" is too vague and ambiguous to permit a response and Defendants lack sufficient information and knowledge as to Plaintiff's work for other employers to form a belief as to the truth of the assertion.  Defendants deny the remaining allegations in paragraph 8.

9.      In response to the allegations in paragraph 9 of the Complaint, Defendants state that the allegations are consistent with Plaintiff's past representations to the Council.

10.      In response to the allegations in paragraph 10 of the Complaint, Defendants admit that Plaintiff worked for the Council on light rail transit projects.  Defendants further

state that Plaintiff's written performance reviews speak for themselves. Defendants deny that Plaintiff's performance reviews have "consistently" been positive.

11. In response to the allegations in paragraph 11 of the Complaint (including subparts a-h), Defendants admit that Plaintiff worked as a construction inspector on the Central Corridor project from 2010 to 2012. Defendants refer to the written job descriptions for the position, which speak for themselves.

12. In response to the allegations in paragraph 12 of the Complaint (including subparts a-i), Defendants admit that Plaintiff worked as an engineer on the Central Corridor project from 2012 to 2014. Defendants further state that Plaintiff's job duties in the engineer role generally included, but were not limited to, the duties listed in the subparts to paragraph 12, and refer to the written job descriptions of the position, which speak for themselves. Defendants state that upon information and belief, Plaintiff was assigned the duties listed in paragraph 12. Defendants further state that paragraph 12 omits that Plaintiff's job duties in the engineer role included preparing, documenting, negotiating, and justifying contract change orders and estimates.

13. In response to the allegations in paragraph 13 of the Complaint (including subparts a-h), Defendants admit that Plaintiff worked as a principal contract administrator on Metro Transit projects from 2014 to 2015. Defendants further state that Plaintiff's job duties in the principal contract administrator role generally included, but were not limited to, the duties listed in the subparts to paragraph 13, and refer to the written job descriptions for the position, which speak for themselves. Defendants state that upon information and belief, Plaintiff was assigned the duties listed in paragraph 13. Defendants further state

that paragraph 13 omits that Plaintiff's job duties in the principal contract administrator role included negotiating change order pricing.

14. In response to the allegations in paragraph 14 of the Complaint (including subparts a-i), Defendants admit that Plaintiff worked as a project controls manager on the Project from 2015 to 2022. Defendants further state that Plaintiff's job duties in the project controls manager position generally included, but were not limited to, the duties listed in the subparts to paragraph 14, and refer to the written job descriptions for the position, which speak for themselves. Defendants state that upon information and belief, Plaintiff was tasked with performing the duties listed in paragraph 14. Defendants further state that paragraph 14 omits Plaintiff's job duties as a project controls manager related to change order administration, which included timely completion of change-order write-ups and monthly change order reports.

15. In response to the allegations in paragraph 15 of the Complaint, Defendants state that, upon information and belief, Defendant Hollick might at some point in time have referred to Plaintiff as alleged in the quoted phrase or something to that effect. Defendants deny the remaining allegations in paragraph 15 of the Complaint.

16. Defendants admit the allegations in paragraph 16 of the Complaint.

17. In response to the allegations in paragraph 17 of the Complaint, Defendants state that, upon information and belief, the Project is the largest federally funded public-works project in Minnesota history. Defendants lack sufficient information and knowledge as to the allegation that the Project is the "largest taxpayer-funded transit project in the Midwest" and therefore deny the same.

18.     Defendants admit the allegations in paragraph 18 of the Complaint.

19.     Defendants admit the allegations in paragraph 19 of the Complaint.

20.     In response to the allegations in paragraph 20 of the Complaint, Defendants admit that the Federal Transit Administration ("FTA") is an agency within the United States Department of Transportation.  Assuming paragraph 20 means to refer to the Intermodal Surface Transportation Efficiency Act of 1991 ("ISTEA"), Defendants state that the ISTEA and the Department of Transportation website cited in footnote 1 to paragraph 20 speak for themselves and deny any characterization thereof.

21.     In response to the allegations in paragraph 21 of the Complaint, Defendants state that the FTA's Regulations and Guidance regarding the New Start Capital Investment Grants Program speak for themselves and deny all allegations which are inconsistent with the FTA's published materials.  *See Capital Investment Grants Program*, Fed. Transit Admin., https://www.transit.dot.gov/CIG (last visited Dec. 3, 2023).

22.     In response to the allegations in paragraph 22 of the Complaint, Defendants state that the federal guidance document regarding Full Funding Grant Agreements speaks for itself and deny all allegations which are inconsistent with the FTA's published materials.  *See* FTA Circular No. C 5200.1A, *Full-Funding Grant Agreements Guidance* (Dec. 5, 2002), https://www.transit.dot.gov/regulations-and-guidance/fta-circulars/full-funding-grant-agreements-guidance.

23.     In response to the allegations in paragraph 23 of the Complaint, assuming paragraph 23 means to refer to the ISTEA, Defendants state that the ISTEA speaks for itself and deny any characterization thereof.

24.     In response to the allegations in paragraph 24 of the Complaint, Defendants state that the federal guidance document regarding Full Funding Grant Agreements speaks for itself and deny all allegations which are inconsistent with the FTA's published materials.  *See* FTA Circular No. C 5200.1A, *Full-Funding Grant Agreements Guidance* (Dec. 5, 2002),  https://www.transit.dot.gov/regulations-and-guidance/fta-circulars/full-funding-grant-agreements-guidance.

25.     In response to the allegations in paragraph 25 of the Complaint, Defendants state that the federal guidance document regarding Full Funding Grant Agreements speaks for itself and deny all allegations which are inconsistent with the FTA's published materials.  *See* FTA Circular No. C 5200.1A, *Full-Funding Grant Agreements Guidance* (Dec. 5, 2002),  https://www.transit.dot.gov/regulations-and-guidance/fta-circulars/full-funding-grant-agreements-guidance.

26.     In response to the allegations in paragraph 26 of the Complaint, Defendants state that the federal guidance document regarding Full Funding Grant Agreements speaks for itself and deny all allegations which are inconsistent with the FTA's published materials.  *See* FTA Circular No. C 5200.1A, *Full-Funding Grant Agreements Guidance* (Dec. 5, 2002),  https://www.transit.dot.gov/regulations-and-guidance/fta-circulars/full-funding-grant-agreements-guidance.

27.     In response to the allegations in paragraph 27 of the Complaint, Defendants state that the federal guidance document regarding Full Funding Grant Agreements speaks for itself and deny all allegations which are inconsistent with the FTA's published materials.  *See* FTA Circular No. C 5200.1A, *Full-Funding Grant Agreements Guidance*

(Dec. 5, 2002), https://www.transit.dot.gov/regulations-and-guidance/fta-circulars/full-funding-grant-agreements-guidance.

28.    In response to the allegations in paragraph 28 of the Complaint, Defendants state that the federal guidance document regarding Full Funding Grant Agreements speaks for itself and deny all allegations which are inconsistent with the FTA's published materials. *See* FTA Circular No. C 5200.1A, *Full-Funding Grant Agreements Guidance* (Dec. 5, 2002), https://www.transit.dot.gov/regulations-and-guidance/fta-circulars/full-funding-grant-agreements-guidance.

29.    Defendants admit the allegations in paragraph 29 of the Complaint.

30.    In response to the allegations in paragraph 30 and footnote 2 of the Complaint, Defendants state that the federal guidance document regarding Full Funding Grant Agreements defines "baseline cost estimate" and speaks for itself. Defendants deny all allegations which are inconsistent with the FTA's published materials. *See* FTA Circular No. C 5200.1A, *Full-Funding Grant Agreements Guidance* (Dec. 5, 2002), https://www.transit.dot.gov/regulations-and-guidance/fta-circulars/full-funding-grant-agreements-guidance. Defendants state that the Application speaks for itself. Defendants further state that the Application was granted and deny the remaining allegations in paragraph 30.

31.    In response to the allegations in paragraph 31 of the Complaint, Defendants state that the Application describes the Council's cost estimate methodology and speaks for itself.

32.     In response to the allegations in paragraph 32 of the Complaint, Defendants state that the Application speaks for itself.

33.     In response to the allegations in paragraph 33 of the Complaint, Defendants state that the federal guidance document regarding Full Funding Grant Agreements defines "baseline schedule" and speaks for itself. Defendants deny all allegations which are inconsistent with the FTA's published materials. *See* FTA Circular No. C 5200.1A, *Full-Funding Grant Agreements Guidance* (Dec. 5, 2002), https://www.transit.dot.gov/regulations-and-guidance/fta-circulars/full-funding-grant-agreements-guidance. Defendants state that Council leaders continuously discussed the Project's schedule with the Council's civil contractor and the federal government with the goal of efficiently managing the Project.

34.     In response to the allegations in paragraph 34 of the Complaint, Defendants state that the phrase "took issue" is vague and ambiguous and Defendants lack sufficient information or knowledge to admit or deny whether Plaintiff or any other unnamed Council employees "took issue" with the civil contractor's proposed schedule. Defendants further state that, as recognized in the Minnesota Office of the Legislative Auditor's public reports and the Council's responses thereto, delays in federal review of the Project made it impossible for the Council to award the contract such that the contract could be completed within the Application's originally proposed baseline schedule. Defendants state that the Council negotiated a re-sequenced schedule with the civil contractor. Defendants deny the remaining allegations in paragraph 34.

35.     Defendants deny the allegations in paragraph 35 of the Complaint.

36. In response to the allegations in paragraph 36 of the Complaint, Defendants deny that it is "not customary" or is otherwise inappropriate or inconsistent with Council policy for senior leaders on a project to participate in the resolution of issues relating to the Project's schedule. Defendants state that the individuals identified in paragraph 36 performed their roles and responsibilities on the Project. Defendants further state that the Council engaged a consulting expert and outside counsel to advise the Council on issues related to the Project's schedule. Defendants deny the remaining allegations in paragraph 36.

37. In response to the allegations in paragraph 37 of the Complaint, Defendants state that, as with any project of comparable size and complexity, numerous issues that "affect[]" the Project's baseline schedule—including supply or labor constraints, unforeseen design issues, and other reasonable and necessary changes to the Project's scope—have needed to be resolved on an ongoing basis. Defendants otherwise deny the allegations in paragraph 37.

38. In response to the allegations in paragraph 38 of the Complaint, Defendants state that as recognized in the Minnesota Office of the Legislative Auditor's public reports and the Council's responses thereto, delays in federal review of the Project made it impossible for the Council to award the contract such that the contract could be completed within the Application's originally proposed baseline schedule. Defendants state that the Council negotiated a re-sequenced schedule with the civil contractor. Defendants deny the remaining allegations in paragraph 38 of the Complaint.

39. Defendants deny the allegations in paragraph 39 of the Complaint.

40.     In response to the allegations in paragraph 40 of the Complaint, Defendants state that the Full Funding Grant Agreement speaks for itself and deny Plaintiff's allegations to the extent they are inconsistent with the Agreement.

41.     In response to the allegations in paragraph 41 of the Complaint, Defendants state that federal regulation 2 C.F.R. § 200.303(a), governing Full Funding Grant Agreements, speaks for itself and deny any characterization thereof.

42.     In response to the allegations in paragraph 42 of the Complaint, Defendants state that the allegations are legal conclusions to which no response is required.  To the extent a response is required, Defendants state that the federal regulations cited in paragraph 42 speak for themselves and deny any characterization thereof.

43.     In response to the allegations in paragraph 43 of the Complaint, Defendants state that the allegations are legal conclusions to which no response is required.  To the extent a response is required, Defendants state that the federal regulation and federal agency guidance document cited in paragraph 43 speak for themselves and deny any characterization thereof.

44.     In response to the allegations in paragraph 44 of the Complaint, Defendants state that the allegations are legal conclusions to which no response is required.  To the extent a response is required, Defendants state that the legal "requirements" speak for themselves and deny that the Council failed to comply with any legal requirements.

45.     In response to the allegations in paragraph 45 of the Complaint, Defendants admit the general proposition that an independent cost estimate is "an estimate of how much the contemplated work will cost."  Defendants state that an independent cost estimate

that accounts for all relevant factors, including cost assumptions regarding constructability and on-the-ground site constraints, is a tool in evaluating the overall reasonableness of a contractor's proposed cost for a change order.

46.     In response to the allegations in paragraph 46 of the Complaint, Defendants state that an independent cost estimate that accounts for all relevant factors, including cost assumptions regarding constructability and on-the-ground site constraints, is a tool in evaluating the overall reasonableness of a contractor's proposed cost for a change order. Defendants state that the independent cost estimate can be used to prevent overpayment for work in the absence of price competition.  Defendants deny the remaining allegations in paragraph 46.

47.     In response to the allegations in paragraph 47 of the Complaint, Defendants admit that the Council previously contracted with AECOM Technical Services, Inc. ("ATS") to perform multiple functions including: (1) acting as the Engineer of Record on the Project; and (2) providing cost estimating services.  ATS's cost-estimating services accounted for only a small portion of the initial contract price of $117 million.  Defendants further state that the Council fulfilled its legal obligations in connection with obtaining independent cost estimates.

48.     Defendants admit the allegations in paragraph 48 of the Complaint.

49.     Defendants admit the allegations in paragraph 49 of the Complaint.

50.     In response to the allegations in paragraph 50 of the Complaint, Defendants state that its contract with ATS speaks for itself and deny any characterization thereof.

51.     In response to the allegations in paragraph 51 of the Complaint, Defendants state that its contract with ATS speaks for itself and deny any characterization thereof.

52.     In response to the allegations in paragraph 52 of the Complaint, Defendants admit that ATS had background knowledge potentially relevant to SWLRT change orders because it led the design of the Project. Defendants lack sufficient information or knowledge to admit or deny the remaining allegations in paragraph 52 of the Complaint (including subparts a-d) and on that basis deny them.

53.     In response to the allegations in paragraph 53 of the Complaint, Defendants admit that the Council developed a change order proposal process using the eBuilder software, which in part protected the independence of ATS's work and ensured compliance with federal laws and regulations.  Defendants deny that Plaintiff personally created or developed the change order proposal process.

54.     In response to the allegations in paragraph 54 of the Complaint, Defendants state that no response is required to the extent the allegations call for a legal conclusion. Defendants otherwise admit that paragraph 54 of the Complaint (including subparts a-d) generally describes the change order process used on the Project.  Defendants deny that the Council "was legally required to . . . determine whether the contractor's estimate was cost-effective" and deny any suggestion that the Council did not comply with all legal requirements.

55.     In response to the allegations in paragraph 55 of the Complaint, Defendants state that the phrase "dwarfed" is vague and ambiguous.  Defendants admit that ATS's cost estimates were frequently lower than the civil contractor's cost estimates, in large part

because ATS's estimates frequently missed scope elements and lacked cost assumptions regarding constructability and site constraints that impacted the final cost of negotiated change orders.

56.     Defendants deny the allegations in paragraph 56 of the Complaint.

57.     In response to the allegations in paragraph 57 of the Complaint, Defendants state that, upon information and belief, members of the construction team were aware of the civil contractor's cost estimate for one change order before that estimate was uploaded to eBuilder, but not before the independent cost estimate for the same change order had been uploaded to eBuilder.  Defendants deny the remaining allegations in paragraph 57.

58.     Defendants deny the allegations in paragraph 58 of the Complaint.

59.     In response to the allegations in paragraph 59 of the Complaint, Defendants state that the documents referenced in paragraph 59 speak for themselves and deny any characterization thereof.

60.      In response to the allegations in paragraph 60 of the Complaint, Defendants state that Council employees appropriately "communicat[ed] with the civil contractor" concerning the scope of work to be performed to ensure that the Council's independent cost estimate accurately reflected the work to be performed.  Defendants deny the remaining allegations in paragraph 60.

61.     Defendants admit that Plaintiff sent the email excerpted below paragraph 61 of the Complaint to Defendant Hollick on April 8, 2020 and state that the email speaks for itself.  Defendants deny Plaintiff's characterization of the email and deny all remaining allegations in paragraph 61 of the Complaint.

62.     Defendants deny the allegations in paragraph 62 of the Complaint.

63.     In response to the allegations in paragraph 63 of the Complaint, Defendants state that Council employees appropriately communicated with the civil contractor concerning the "manner of work to be performed" to ensure that the Council's independent cost estimates accurately reflected the work to be performed. Defendants deny the insinuation that these communications addressed the contractor's costs or undermined the independence of the Council's cost estimates.

64.     Defendants deny the allegations in paragraph 64 of the Complaint.

65.     Defendants deny the allegations in paragraph 65 of the Complaint.

66.     Defendants deny the allegations in paragraph 66 of the Complaint.

67.     In response to the allegations in paragraph 67 of the Complaint, Defendants state that lump-sum change orders are often desirable. Defendants deny the insinuation that it is improper to consider the "cumulative effects" of change orders and deny the remaining allegations in paragraph 67 of the Complaint.

68.     Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 68 of the Complaint and on that basis deny them.

69.     Defendants deny the allegations in paragraph 69 of the Complaint.

70.     Defendants deny the allegations in paragraph 70 of the Complaint.

71.     In response to the allegations in paragraph 71 of the Complaint, Defendants admit the civil construction contract permits the parties to negotiate fees for overhead and profit. Defendants deny that the civil construction contract sets maximum allowable fees

for overhead and profit on lump sum change orders. Defendants state that the civil construction contract speaks for itself.

72.     Defendants deny the allegations in paragraph 72 of the Complaint.

73.     In response to the allegations in paragraph 73 of the Complaint, Defendants state that they are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

74.     In response to the allegations in paragraph 74 of the Complaint, Defendants state that the Full Funding Grant Agreement was submitted to the United States Congress for review on August 4, 2020.

75.     Defendants deny the allegations in paragraph 75 of the Complaint and state that, as ATS recognized in 2020, the markups employed for change orders on the Project were reasonable and consistent with prior project experience in the market.

76.     In response to the allegations in paragraph 76 of the Complaint, Defendants state that Council employees used a document known as a "Pivot Report" to correct cost estimates received from ATS that omitted or failed to consider relevant factors, including estimates that lacked cost assumptions regarding constructability and site constraints that would impact the final cost of a negotiated change order.  Defendants deny the remaining allegations in paragraph 76.

77.     In response to the allegations in paragraph 77 of the Complaint, Defendants state that Council employees used a document known as a "Pivot Report" to correct cost estimates received from ATS that omitted or failed to consider relevant factors, including estimates that lacked cost assumptions regarding constructability and site constraints that

would impact the final cost of a negotiated change order. Defendants deny the remaining allegations in paragraph 77.

78. Defendants deny the allegations in paragraph 78 of the Complaint.

79. Defendants deny the allegations in paragraph 79 of the Complaint and state that Council employees properly corrected cost estimates received from ATS that failed to consider necessary factors, and that the Council properly used the corrected figures as its negotiating positions with the civil contractor.

80. In response to the allegations in paragraph 80 of the Complaint, Defendants lack sufficient information or knowledge to admit or deny what the individuals identified in paragraph 80 thought or "expressed." Defendants deny the remaining allegations in paragraph 80.

81. Defendants lack sufficient information or knowledge to admit or deny the allegations in paragraph 81 of the Complaint and on that basis deny them.

82. In response to the allegations in paragraph 82 of the Complaint, Defendants state that Council employees properly corrected cost estimates received from ATS that failed to consider necessary factors, and that the Council properly used the corrected figures as its negotiating positions with the Council's civil contractor. Defendants deny the remaining allegations in paragraph 82.

83. To the extent the allegations in paragraph 83 of the Complaint (including all subparts) purport to state or interpret federal regulations and guidance documents, Defendants state that those documents speak for themselves and deny any characterization

thereof. Defendants further state that allegations calling for a legal conclusion do not require a response. Defendants deny all remaining allegations in paragraph 83.

84.     In response to the allegations in paragraph 84 of the Complaint, Defendants state that the Council follows all applicable laws and regulations. Defendants further state that the regulation cited in paragraph 84 speaks for itself and deny any characterization thereof.

85.     In response to the allegations in paragraph 85 of the Complaint, Defendants state that the "federal regulations" referenced in paragraph 85 speak for themselves and deny any characterization thereof.

86.     Defendants deny the allegations in paragraph 86 of the Complaint.

87.     In response to the allegations in paragraph 87 of the Complaint, Defendants state that they lack sufficient information or knowledge to admit or deny the existence of alleged communications "amongst" Plaintiff and unnamed Council employees. Defendants deny the remaining allegations in paragraph 87.

88.     In response to the allegations in paragraph 88 of the Complaint, Defendants admit that the FTA formally approved the Council's Full Funding Grant Agreement on September 14, 2020. Defendants deny any suggestion by the use of the word "Yet" that such approval was not appropriate.

89.     Defendants lack sufficient information or knowledge to admit or deny the allegations in paragraph 89 of the Complaint and on that basis deny them.

90.     Defendants lack sufficient information or knowledge to admit or deny the allegations in paragraph 90 of the Complaint and on that basis deny them.

91.     In response to the allegations in paragraph 91 of the Complaint, Defendants state that the publicly available correspondence between ATS and the Council concerning the independent cost estimate process and ATS's position speaks for itself and deny any characterization thereof.  Defendants deny the remaining allegations in paragraph 91.

92.     In response to the allegations in paragraph 92 of the Complaint, Defendants state that the publicly available correspondence between ATS and the Council concerning the independent cost estimate process and ATS's position speaks for itself and deny any characterization thereof.  Defendants deny the remaining allegations in paragraph 92.

93.     In response to the allegations in paragraph 93 of the Complaint, Defendants state that the quoted document speaks for itself and deny any characterization thereof.

94.     Defendants deny the allegations in paragraph 94 of the Complaint.

95.     In response to the allegations in paragraph 95 of the Complaint, Defendants admit that Change Order 591 was issued for construction of a barrier protection wall and Change Order 90 was issued for associated earthwork.  Defendants deny the remaining allegations in paragraph 95.

96.     Defendants admit the allegations in paragraph 96 of the Complaint.

97.     Defendants deny the allegations in paragraph 97 of the Complaint.

98.     In response to the allegations in paragraph 98 of the Complaint, Defendants state that the Council's independent cost estimate for Change Order 90 was approximately $35 million.  Defendants state that the civil contractor's estimates speak for themselves. Defendants deny the remaining allegations in paragraph 98.

99.     Defendants deny the allegations in paragraph 99 of the Complaint and state that ATS's cost estimate failed to consider a wide range of necessary factors impacting the cost of the work to be performed.

100.     In response to the allegations in paragraph 100 of the Complaint, Defendants admit that the agreed combined cost for Change Orders 90 and 591 was approximately $92.5 million.     Defendants deny the remaining allegations in paragraph 100 and specifically deny that "Metropolitan Council ignored its obligations under the law."

101.     In response to the allegations in paragraph 101 of the Complaint, Defendants admit that the Council drafted a Summary of Negotiations for Change Orders 90 and 591, consistent with its standard practices.     Defendants deny the remaining allegations in paragraph 101.

102.     Defendants deny the allegations in paragraph 102 of the Complaint.

103.     In response to the allegations in paragraph 103 of the Complaint, Defendants state that the Summary of Negotiations speaks for itself and further state that the Council's initial independent cost estimate of $35,113,389 for Change Order 90 appropriately included allowable markups that had been omitted from ATS's initial estimate. Defendants deny the remaining allegations in paragraph 103.

104.     In response to the allegations in paragraph 104 of the Complaint, Defendants state that the Summary of Negotiations speaks for itself and further state that the Council's independent cost estimate of $36.6 million for Change Order 591 appropriately included allowable markups that had been omitted from ATS's initial estimate.     Defendants deny the remaining allegations in paragraph 104.

105.    In response to the allegations in paragraph 105 of the Complaint, Defendants state that the Summary of Negotiations speaks for itself.  Defendants further state that a Project-wide constructability analysis would not include an analysis of constructability for work performed as a change order because it was not included in the original Project scope. Defendants deny the remaining allegations in paragraph 105.

106.    In response to the allegations in paragraph 106 of the Complaint, Defendants state that the FTA's initial constructability review would not include an analysis of constructability for work performed as a change order because it was not included in the original Project scope.  Defendants otherwise lack sufficient information or knowledge to admit or deny the allegations in paragraph 106 and on that basis deny them.

107.    Defendants deny the allegations in paragraph 107 of the Complaint.

108.    In response to the allegations in paragraph 108 of the Complaint, Defendants state that the Summary of Negotiations speaks for itself and deny any characterization thereof.  Defendants deny the remaining allegations in paragraph 108.

109.    In response to the allegations in paragraph 109 of the Complaint, Defendants state that the Summary of Negotiations speaks for itself and deny any characterization thereof.

110.    In response to the allegations in paragraph 110 of the Complaint, Defendants deny that "the estimated train delays were fabricated."  Defendants lack sufficient information or knowledge to admit or deny what Plaintiff believes he "knows."

111.    Defendants lack sufficient information or knowledge to admit or deny the allegations in paragraph 111 of the Complaint and on that basis deny them.

112. In response to the allegations in paragraph 112 of the Complaint, Defendants deny that Atlas Construction drilled caissons for Change Orders 90 and 591. Defendants lack sufficient information or knowledge to admit or deny the remaining allegations in paragraph 112 and on that basis deny them.

113. Defendants lack sufficient information or knowledge to admit or deny the allegations in paragraph 113 of the Complaint and on that basis deny them.

114. Defendants deny the allegations in paragraph 114 of the Complaint.

115. In response to the allegations in paragraph 115 of the Complaint, Defendants state that the Council engaged Faithful+Gould ("F&G") to perform an independent review of Change Orders 90 and 591. Defendants deny the remaining allegations in paragraph 115.

116. Defendants deny the allegations in paragraph 116 of the Complaint.

117. In response to the allegations in paragraph 117 of the Complaint, Defendants state that any drafts of memoranda from F&G speak for themselves and deny any characterization thereof. Defendants lack sufficient information or knowledge to admit or deny what documents Plaintiff has.

118. In response to the allegations in paragraph 118 of the Complaint, Defendants state that the March 18, 2021 F&G memorandum speaks for itself and deny any characterization thereof. Defendants state that the Council properly determined that the negotiated costs for Change Orders 90 and 591 were fair and reasonable. Defendants deny the remaining allegations in paragraph 118.

119. Defendants deny the allegations in paragraph 119 of the Complaint.

120. In response to the allegations in paragraph 120 of the Complaint, Defendants state that the redlined draft document excerpt labeled "Figure 1" (assuming it is an accurate representation) speaks for itself and deny any characterization thereof. Defendants deny the remaining allegations in paragraph 120.

121. In response to the allegations in footnote 3 of paragraph 121 of the Complaint, Defendants state that the Council "cooperated fully" with the Office of the Legislative Auditor's special review of the Project, as reflected in the Office's cover letter to the special review. Defendants deny the remaining allegations in paragraph 121.

122. Defendants deny the allegations in paragraph 122 of the Complaint.

123. In response to the allegations in paragraph 123 of the Complaint, Defendants state that the redlined draft document excerpt labeled "Figure 2" (assuming it is an accurate representation) speaks for itself and deny any characterization thereof. Defendants deny the remaining allegations in paragraph 123.

124. In response to the allegations in paragraph 124 of the Complaint, Defendants state that the March 25, 2021 message labeled "Figure 3" (assuming it is an accurate representation) speaks for itself and deny any characterization thereof. Defendants deny the remaining allegations in paragraph 124.

125. In response to the allegations in paragraph 125 of the Complaint, Defendants state that by April 29, 2022, there had been 622 change orders with a net cost of approximately $225 million. Defendants deny the remaining allegations in paragraph 125.

126.    In response to the allegations in paragraph 126 of the Complaint, Defendants lack sufficient information or knowledge to admit or deny what Plaintiff believes he "discovered" or "attempted to investigate" and on that basis deny the allegations.

127.    Defendants deny the allegations in paragraph 127 of the Complaint and state that "general conditions" is a standard category in construction contracts to capture additional cost and overhead.  Defendants deny any characterization of this line item as somehow inappropriate or irregular.

128.    In response to the allegations in paragraph 128 of the Complaint, Defendants state that the schedule of values purportedly referenced in this paragraph speaks for itself and deny any characterization thereof.  Defendants further state that "general conditions" is a standard category in construction contracts to capture additional cost and overhead and deny any characterization of this line item as somehow inappropriate or irregular.

129.    In response to the allegations in paragraph 129 of the Complaint, Defendants state that the schedule of values purportedly referenced in this paragraph speaks for itself and deny any characterization thereof.  Defendants further state that "general conditions" is a standard category in construction contracts to capture additional cost and overhead and deny any characterization of this line item as somehow inappropriate or irregular. Defendants deny the remaining allegations in paragraph 129.

130.    Defendants deny the allegations in paragraph 130 of the Complaint.

131.    Defendants deny the allegations in paragraph 131 of the Complaint.

132.    In response to the allegations in paragraph 132 of the Complaint, Defendants lack sufficient information or knowledge to admit or deny what Plaintiff believes he "discovered."  Defendants deny the remaining allegations in paragraph 132.

133.    In response to the allegations in paragraph 133 of the Complaint, Defendants state that Change Order 669, referenced in this paragraph, speaks for itself and deny any characterization thereof.

134.    In response to the allegations in paragraph 134 of the Complaint, Defendants state that when Plaintiff came to Hollick with questions or concerns about change orders, which typically reflected a fundamental lack of understanding of the change order process, Hollick explained the process and procedures to Plaintiff.  Defendants deny that Plaintiff reported a "violation," deny that any "violation" occurred, deny that Hollick ever "thwarted his efforts," and deny all remaining allegations in paragraph 134.

135.    Defendants deny the allegations in paragraph 135 of the Complaint.

136.    In response to the allegations in paragraph 136 of the Complaint, Defendants state that the civil construction contract speaks for itself and deny any characterization thereof.  Defendants deny that the Council was entitled to liquidated damages.

137.    Defendants lack sufficient information or knowledge to admit or deny the allegations in paragraph 137 of the Complaint as to what Plaintiff "informed" the Council and deny that the Council was entitled to liquidated damages.

138.    In response to the allegations in paragraph 138 of the Complaint, Defendants state that the civil construction contract speaks for itself.  Defendants deny the allegations in paragraph 138.

139.    In response to the allegations in paragraph 139 of the Complaint, Defendants state that on or about March 17, 2022, the Council entered into a settlement agreement with the civil contractor relating to the contract schedule but deny that the Council did so "[i]nstead" of assessing liquidated damages.    Defendants state that the settlement agreement speaks for itself and deny any characterizations thereof.    Defendants deny the remaining allegations in paragraph 139.

140.    In response to the allegations in paragraph 140 of the Complaint, Defendants deny that Janish made "internal reports of unlawful activity" and deny that the Council engaged in unlawful activity.    Defendants state that on occasion Plaintiff came to Hollick with questions or concerns about change orders, which typically reflected a fundamental lack of understanding of the change order process.    Defendants state that Hollick explained the process and procedures to Plaintiff.    Defendants state that they lack sufficient information or knowledge to admit or deny Plaintiff's alleged communications with "law enforcement" and on that basis deny those allegations.    Defendants deny the remaining allegations in paragraph 140.

141.    Defendants lack sufficient information or knowledge to admit or deny the allegations in paragraph 141 of the Complaint and on that basis deny them.

142.    In response to the allegations in paragraph 142 of the Complaint, Defendants state that the May 24, 2021 letter from ATS to the Council speaks for itself and deny any characterization thereof.

143.     In response to the allegations in paragraph 143 of the Complaint, Defendants state that the May 27, 2021 letter from ATS to the Council speaks for itself and deny any characterization thereof.

144.     Defendants admit the allegations in paragraph 144 of the Complaint.

145.     In response to the allegations in paragraph 145 of the Complaint, Defendants state that the July 1, 2021 letter from ATS to the Council speaks for itself and deny any characterization thereof.

146.     In response to the allegations in paragraph 146 of the Complaint, Defendants state that at a meeting with Council staff on or around July 2021, which Plaintiff may have attended, an FTA representative made a general statement as to the government's involvement in projects where defective materials (such as concrete) were left in place. Defendants deny that any such comment was intended to serve as notice of Office of the Inspector General review related to the Project and deny the remaining allegations in paragraph 146.

147.     In response to the allegations in paragraph 147 of the Complaint, Defendants state that the July 19, 2021, letter from Senator Scott Dibble and Representative Frank Hornstein to the Legislative Auditor speaks for itself and deny any characterization thereof.

148.     In response to the allegations in paragraph 148 of the Complaint, Defendants admit that Plaintiff was expected to support the change order process by performing cost analyses.  Defendants state that these duties were part of Plaintiff's job and deny that any assigned tasks constituted "extra job duties."  Defendants deny the remaining allegations in paragraph 148.

149.     Defendants deny the allegations in paragraph 149 of the Complaint and state that multiple levels of employees, including employees more senior than Plaintiff, work on the change order process.

150.     In response to the allegations in paragraph 150 of the Complaint, Defendants state that the Pivot Reports referenced in this paragraph speak for themselves and deny any characterization thereof, and further state that paragraphs 76 and 77, *supra*, address Pivot Reports.  Defendants deny the remaining allegations in paragraph 150.

151.     Defendants lack sufficient information or knowledge to admit or deny the allegations in paragraph 151 of the Complaint and on that basis deny them.

152.     Defendants admit the allegations in paragraph 152 of the Complaint and state that the Performance Expectations Memo speaks for itself.

153.     In response to the allegations in paragraph 153 of the Complaint, Defendants state that the October 2, 2021, Notice of Investigation speaks for itself and deny any characterization thereof.  Defendants state that the subject of the investigation was Plaintiff's failure to complete a change order after several reminders and prior to taking a vacation as directed.  Defendants deny the remaining allegations in paragraph 153.

154.     Defendants admit the allegations in paragraph 154 of the Complaint.

155.     In response to the allegations in paragraph 155 of the Complaint (including subparts a-d), Defendants admit that during their October 4 investigation meeting, which included Plaintiff's union representation, Hollick asked Plaintiff the questions listed in subparts a-d and state that Plaintiff answered in the affirmative to all of them.  Defendants deny the remaining allegations in paragraph 155.

156.     In response to the allegations in paragraph 156 of the Complaint, Defendants admit Plaintiff went on approved FMLA leave on or about October 8, 2021, for the stated reason of caring for his mother.

157.     In response to the allegations in paragraph 157 of the Complaint, Defendants admit that Defendant Hollick met with Plaintiff on or around October 26, 2021, and gave Plaintiff a documented verbal warning dated October 11, 2021.  Defendants state that the October 11, 2021 documented verbal warning speaks for itself and deny any characterization thereof.  Defendants deny the remaining allegations in paragraph 157.

158.     In response to the allegations in paragraph 158 of the Complaint, Defendants state that the October 26, 2021 email referenced in this paragraph speaks for itself and deny any characterization thereof.

159.     In response to the allegations in paragraph 159 of the Complaint, Defendants admit that the Office of the Legislative Auditor released a memo in response to Senator Dibble and Representative Hornstein's letter on October 28, 2021.  Defendants deny the remaining allegations in paragraph 159.

160.     In response to the allegations in paragraph 160 of the Complaint, Defendants admit that Plaintiff was notified on or around November 1, 2021, of an investigation regarding Plaintiff's failure to pursue outstanding information necessary to complete a change order write-up.  Defendants state that the November 1, 2021 Notice of Investigation speaks for itself and deny any characterization thereof.  Defendants deny the remaining allegations in paragraph 160.

161.     In response to the allegations in paragraph 161 of the Complaint, Defendants admit that Plaintiff sent a letter dated November 1, 2021 to Hollick, SWLRT Project Director Jim Alexander, and Regional Administrator Mary Bogie.  Defendants state that the November 1, 2021 letter speaks for itself and deny any characterization thereof.

162.     In response to the allegations in paragraph 162 of the Complaint, Defendants admit that Plaintiff, along with his union representative, attended an investigatory meeting on November 2, 2021.  Defendants state that the Council's labor relations representative also attended.  Defendants state that during the meeting, Hollick reiterated that Plaintiff had not completed assigned work.  Defendants deny the remaining allegations in paragraph 162.

163.     In response to the allegations in paragraph 163 of the Complaint, Defendants state that Plaintiff expressed his disagreement with the Council's determination that its evaluation and approval of change orders were consistent with all applicable law.  Defendants further state that Hollick asked Plaintiff if he had made any effort to follow up with the contractor and obtain the information and documentation he deemed missing and Plaintiff responded that he had not.  Defendants deny the remaining allegations in paragraph 163.

164.     In response to the allegations in paragraph 164 of the Complaint, Defendants state that the purpose of the change order write-up process is to identify all costs for a change order and ensure the costs are fair and reasonable.  Defendants further state that the Council determined its change order process complied with all applicable laws and Hollick

explained these determinations to Plaintiff. Defendants deny the remaining allegations in paragraph 164.

165. In response to the allegations in paragraph 165 of the Complaint, Defendants state that Hollick explained the difference between ATS's original cost estimates, which omitted numerous factors affecting the cost of change orders, and the Council's negotiating positions, which corrected these omissions. Defendants deny the remaining allegations in paragraph 165.

166. In response to the allegations in paragraph 166 of the Complaint, Defendants admit that Plaintiff was informed on or around November 10, 2021, that he would be temporarily reassigned. Defendants state that because Plaintiff refused to perform his current job duties, the Council decided to reassign him to perform different job duties within the Project. His pay and benefits did not change during this temporary reassignment. After Plaintiff's initial reassignment, the Council sought to identify an appropriate lateral position with duties Plaintiff would agree to perform. Defendants further state that Hollick was not involved in the decision to reassign Plaintiff. Defendants deny the remaining allegations in paragraph 166.

167. Defendants deny the allegations in paragraph 167 of the Complaint.

168. In response to the allegations in paragraph 168 of the Complaint, Defendants state that Plaintiff was asked not to attend meetings that were unrelated to the job duties of his temporary reassignment. Defendants deny the remaining allegations in paragraph 168 and specifically deny that Plaintiff's reassignment was a demotion.

169.     In response to the allegations in paragraph 169 of the Complaint, Defendants state that the Council followed its standard practices to limit employee access to information relating to the projects in their assigned responsibilities.  Defendants deny the remaining allegations in paragraph 169.

170.     In response to the allegations in paragraph 170 of the Complaint, Defendants state that, after Plaintiff refused to perform the duties of his project controls manager role, Plaintiff was reassigned to perform different job duties within the Project.  After Plaintiff's reassignment, the Council sought to identify an appropriate lateral position with duties that Plaintiff would agree to perform.  Defendants deny the remaining allegations in paragraph 170.

171.     In response to the allegations in paragraph 171 of the Complaint, Defendants state that, after Plaintiff refused to perform the duties of his project controls manager role, Plaintiff was reassigned to perform different job duties within the Project.  After Plaintiff's reassignment, the Council sought to identify an appropriate lateral position with duties that Plaintiff would agree to perform.  Defendants deny Plaintiff's characterization of his temporary new duties.  Defendants deny the remaining allegations in paragraph 171.

172.     In response to the allegations in paragraph 172 of the Complaint, Defendants state that, after Plaintiff refused to perform the duties of his project controls manager role, Plaintiff was reassigned to perform different job duties within the Project. After Plaintiff's reassignment, the Council sought to identify an appropriate lateral position with duties that Plaintiff would agree to perform.  Defendants state that Thompson communicated this reassignment to Plaintiff.  Defendants deny the remaining allegations in paragraph 172.

173. In response to the allegations in paragraph 173 of the Complaint, Defendants state that Thompson informed Plaintiff of a potential role within the engineering and facilities department as one option for a permanent reassignment. Defendants deny the remaining allegations in paragraph 173.

174. In response to the allegations in paragraph 174 of the Complaint, Defendants state that Plaintiff discussed the potential position in the engineering and facilities department with Jim Harwood, Assistant Director of Engineering and Construction, and Plaintiff determined that he was not interested in the position. Defendants deny the remaining allegations in paragraph 174.

175. Defendants admit the allegations in paragraph 175 of the Complaint.

176. Defendants admit the allegations in paragraph 176 of the Complaint.

177. In response to the allegations in paragraph 177 of the Complaint, Defendants admit that Plaintiff told Harwood and Thompson he was not interested in the proposed position in the engineering and facilities department. Defendants lack sufficient information or knowledge to admit or deny whether Plaintiff believes he "remained steadfast." Defendants deny the remaining allegations in paragraph 177.

178. Defendants admit the allegations in paragraph 178 of the Complaint.

179. In response to the allegations in paragraph 179 of the Complaint, Defendants state, upon information and belief, that Human Resources Manager Rebecca Grams said something to the effect that she would help Plaintiff explore options for a permanent reassignment.

180.    In response to the allegations in paragraph 180 of the Complaint, Defendants deny the characterization of the proposed position in the engineering and facilities department as a "reassignment to a bus depot," but otherwise admit the allegations in paragraph 180.

181.    In response to the allegations in paragraph 181 of the Complaint, Defendants admit that Plaintiff stated the concerns included in this paragraph regarding the potential reassignment to the engineering and facilities department.    Defendants deny that the position was a demotion or "would derail his career in light rail."

182.    Defendants lack sufficient information or knowledge to admit or deny the allegations in paragraph 182 of the Complaint and on that basis deny them.

183.    Defendants lack sufficient information or knowledge to admit or deny the allegations in paragraph 183 of the Complaint and on that basis deny them.

184.    Defendants admit the allegations in paragraph 184 of the Complaint.

185.    In response to the allegations in paragraph 185 of the Complaint, Defendants state that Baker explained the purpose of the meeting was to determine whether the alleged conduct about which Plaintiff complained violated the Council's Respectful Workplace policy.

186.    In response to the allegations in paragraph 186 of the Complaint, Defendants state that, regardless of whether an employee alleges a violation of a particular Council policy "per se," the Council investigates employee complaints through the lens of all potentially applicable policies.    Defendants state that Plaintiff's November 1, 2021 letter to Regional Administrator Bogie contained language that implicated the Respectful

Workplace Policy, in addition to the Council's audit policies, warranting Baker's investigation.

187.     Defendants admit the allegations in paragraph 187 of the Complaint.

188.     In response to the allegations in paragraph 188 of the Complaint, Defendants state that Baker requested a copy of a memo Plaintiff received from Defendant Hollick because the memo was not in his personnel file. Defendants state that the personnel file typically will not contain investigation materials or lower-level disciplinary materials. Defendants deny the remaining allegations in paragraph 188.

189.     In response to the allegations in paragraph 189 of the Complaint, Defendants state that Baker indicated that Plaintiff's performance reviews did not appear to contain evidence of a violation of the Respectful Workplace Policy. Defendants lack sufficient information or knowledge to admit or deny the allegation that Baker said the annual reviews "look good." Defendants admit that Baker indicated she lacked authority to investigate allegations beyond those implicating the Respectful Workplace Policy. Defendants further state that the audit department was also attempting to investigate Plaintiff's allegations raised in his November 1, 2021 letter, but Plaintiff refused to meet with the auditors or provide them requested information for their investigation.

190.     In response to the allegations in paragraph 190 of the Complaint, Defendants state that during her investigation, Baker asked routine questions to determine whether the Respectful Workplace Policy had been violated, including whether anyone had physically threatened Plaintiff. Defendants state that Baker evaluated all potential ways in which the

non-retaliation prohibition of the policy could have been violated as to Plaintiff. Defendants deny the remaining allegations in paragraph 190.

191.    In response to the allegations in paragraph 191 of the Complaint, Defendants state that Baker informed Plaintiff she had not so far heard or seen any evidence that anyone had violated the Respectful Workplace Policy but that she would continue to review all of the information.

192.    In response to the allegations in paragraph 192 of the Complaint, Defendants admit that Plaintiff emailed Nick Thomson on or around April 11, 2022, and state that the email speaks for itself.  Defendants further state that by April 2022, employees had begun to return to the office following the COVID-19 pandemic.  Defendants further state that they lack sufficient information or knowledge to admit or deny whether "employees on the SWLRT were talking about celebrating that week with an office party."

193.    In response to the allegations in paragraph 193 of the Complaint, Defendants state that Thompson told Plaintiff he did not need to come to the office for meetings that did not pertain to his job duties at the time.  Defendants deny the remaining allegations in paragraph 193.

194.    Defendants admit the allegations in paragraph 194 of the Complaint.

195.    In response to the allegations in paragraph 195 of the Complaint, Defendants admit that Baker informed Plaintiff she had completed the investigation and he should expect to hear from Thompson and Robin Caufman, Director of Capital Programs Administration.  Defendants deny the remaining allegations in paragraph 195.

196.    Defendants admit the allegations in paragraph 196 of the Complaint.

197.     Defendants admit the allegations in paragraph 197 of the Complaint.

198.     In response to the allegations in paragraph 198 of the Complaint, Defendants state that Plaintiff asked for time to consider the position.  Defendants further state that the Council decided to transfer Plaintiff to the Blue Line Extension project and informed Plaintiff of this decision in an email titled, "confirmation of transfer."  The April 27, 2022 email and attachment speak for themselves.

199.     In response to the allegations in paragraph 199 of the Complaint, Defendants admit that Nick Landwer asked Plaintiff to discuss his new role on the Blue Line Extension project and invited him to a meeting entitled "BLRT Coordination."  Defendants admit that Landwer agreed to postpone the meeting at Plaintiff's request.  Defendants further state that pursuant to standard protocols, access to project documents are restricted to members of a project team.  Defendants further state that given Plaintiff's reassignment, his access to his former project documents was restricted and he was subsequently provided access to documents on the Blue Line Extension project.

200.     In response to the allegations in paragraph 200 of the Complaint, Defendants state that Plaintiff's April 28, 2022 email to Human Resources Director Marcy Syman referenced in this paragraph speaks for itself.

201.     In response to the allegations in paragraph 201 of the Complaint, Defendants state that Plaintiff's April 28, 2022 email to Human Resources Director Marcy Syman referenced in this paragraph speaks for itself and deny any characterization thereof.

202.     In response to the allegations in paragraph 202 of the Complaint, Defendants state that Plaintiff's April 28, 2022 email to Human Resources Director Marcy Syman referenced in this paragraph speaks for itself and deny any characterization thereof.

203.     In response to the allegations in paragraph 203 of the Complaint, Defendants state that the April 29, 2022 email from Syman speaks for itself and deny any characterization thereof.

204.     Defendants deny the allegations in paragraph 204 of the Complaint.

205.     Defendants lack sufficient information or knowledge to admit or deny the allegations in paragraph 205 of the Complaint and on that basis deny them.

206.     In response to the allegations in paragraph 206 of the Complaint, Defendants admit that Plaintiff was asked to move from the SWLRT Project office space to the Blue Line Extension office space when he switched project teams.  Defendants state that the Blue Line Extension office space was located on the opposite side of a building and Plaintiff was assigned to a cubicle space when he was in the office.  Defendants state that Plaintiff primarily worked remotely.

207.     In response to the allegations in paragraph 207 of the Complaint, Defendants admit that Plaintiff was assigned to his prior office while he was on the SWLRT Project team.  Defendants further state that Plaintiff primarily worked remotely since the beginning of the COVID-19 pandemic.

208.     In response to the allegations in paragraph 208 of the Complaint, Defendants state that Plaintiff was asked to remove his belongings from the SWLRT Project office when he was transferred to the Blue Line Extension project team.

209. In response to the allegations in paragraph 209 of the Complaint, Defendants admit that Landwer initially did not understand the removal of Plaintiff's belongings from the office to be time sensitive, but that Caufman texted Landwer asking to have Plaintiff clean out his office as soon as possible. Defendants deny the remaining allegations in paragraph 209 of the Complaint.

210. In response to the allegations in paragraph 210 of the Complaint, Defendants state that the Council maintains documents in accordance with a document retention policy and pursuant to standard practice, restricts access to project documents to the staff assigned to the project. Defendants otherwise lack sufficient information or knowledge to admit or deny the allegations in paragraph 210 and therefore deny them.

211. Defendants admit the allegations in paragraph 211 of the Complaint.

212. In response to the allegations in paragraph 212 of the Complaint, Defendants state that they lack sufficient information or knowledge to admit or deny Plaintiff's feelings. Defendants otherwise deny the allegations in paragraph 212.

213. In response to the allegations in paragraph 213 of the Complaint, Defendants admit that Plaintiff previously managed the project controls team for the Project until he refused to perform his job responsibilities, necessitating his transfer off of the Project. Defendants state that the job description and performance expectations memoranda for the project controls manager position speak for themselves and deny any characterization thereof. Defendants further state that all major projects move through various stages, with varying responsibilities and levels of activity.

214.     In response to the allegations in paragraph 214 of the Complaint, Defendants state that Plaintiff joined the Blue Line Extension team at an early stage of the project, when the project team had fewer than ten total employees.  Defendants admit that Plaintiff supervised a college intern starting in about October 2022.  Defendants further state that all major projects move through various stages, with varying responsibilities and levels of activity.  Defendants state that Plaintiff's job duties, including the opportunity to supervise employees, will change and expand as the stages of the Blue Line Extension project move forward.  Defendants deny the remaining allegations in paragraph 214.

215.     In response to the allegations in paragraph 215 of the Complaint, Defendants state that Plaintiff joined the Blue Line Extension team at an early stage of the project, when the project team had fewer than ten total employees.  Defendants further state that all major projects move through various stages, with varying responsibilities and levels of activity.  Defendants state that the job duties of Plaintiff's current position, including the opportunity to supervise employees, will change and expand as the stages of the Blue Line Extension project move forward.  Defendants further state that project documents are stored in a document management system agreed to and adopted by the FTA.  Defendants deny the remaining allegations in paragraph 215.

216.     In response to the allegations in paragraph 216 of the Complaint, Defendants admit that the Council created and filled a new position as part of its previously planned expansion of the Blue Line Extension project team.  Defendants deny the remaining allegations in paragraph 216 and specifically deny that filling the previously planned position constitutes a demotion of Plaintiff.

217. In response to the allegations in paragraph 217 of the Complaint, Defendants state that job openings are commonly discussed at project team meetings, and Plaintiff should have been aware of the position opening because he attended those meetings. Defendants further state that the job opening was publicly posted. Defendants deny that it is the Council's "customary practice" to reach out to individual employees to encourage them to apply for open positions or that the Council departed from its standard practices in filling this position. Defendants deny the remaining allegations in paragraph 217.

218. Defendants deny the allegations in paragraph 218 of the Complaint.

219. Defendants deny the allegations in paragraph 219 of the Complaint.

220. In response to the allegations in paragraph 220 of the Complaint, Defendants lack sufficient information or knowledge to admit or deny what Plaintiff believes he is "aware" of, and otherwise deny the allegations in paragraph 220.

   a. In response to the allegations in subpart (a) of paragraph 220, Defendants state that former Council employee Tim Wohlever terminated his employment with the Council, but Defendants lack sufficient information or knowledge to admit or deny the alleged reasons for his departure and therefore deny the allegations in this paragraph.

      i. In response to the allegations in subpart (a)(i) of paragraph 220, Defendants state that Wohlever expressed frustration about significant differences between ATS cost estimates and the civil contractor's estimates.

      ii. In response to the allegations in subpart (a)(ii) of paragraph 220, Defendants admit that Wohlever supported the change order process.

Defendants lack sufficient information or knowledge to admit or deny the alleged reasons for his departure. Defendants deny the remaining allegations in subpart (a)(ii) of paragraph 220.

    iii. In response to the allegations in subpart (a)(iii) of paragraph 220, Defendants lack sufficient knowledge to admit or deny whether Wohlever's "benefits vest[ing]" motivated his decision, but, upon information and belief, state that he returned to the private sector.

    iv. Defendants deny the allegations in subpart (a)(iv) of paragraph 220.

b. Defendants deny the allegations in subpart (b) of paragraph 220 of the Complaint.

    i. In response to the allegations in subpart (b)(i) of paragraph 220, Defendants state that a former Council employee named Michelle Spielmann reported to Laura Vedder, who in turn reported to Jody Jacoby. Defendants further state that, for a brief period, Ms. Spielmann reviewed change orders for the Project as part of her job duties.

    ii. In response to the allegations in subpart (b)(ii) of paragraph 220, Defendants state that Jacoby communicated to her staff the Council's standard expectation that Council employees were to use Council-issued or Council-subsidized devices for Council business, in part because of the privacy issues involved when personal devices contain information subject to requests under the Minnesota Government Data Practices Act.

Defendants otherwise deny the allegations in subpart (b)(ii) of paragraph 220.

iii. Defendants deny the allegations in subpart (b)(iii) of paragraph 220.

iv. In response to the allegations in subpart (b)(iv) of paragraph 220, Defendants state that Spielmann observed markups that were properly included in change orders. Defendants deny the remaining allegations in subpart (b)(iv) of paragraph 220.

v. In response to the allegations in subpart (b)(v) of paragraph 220, Defendants state that Spielmann may have attended change order negotiations. Defendants lack sufficient information or knowledge to admit or deny the remaining allegations in subpart (b)(v) of paragraph 220 and therefore deny them.

vi. Defendants deny the allegations in subpart (b)(vi) of paragraph 220.

vii. In response to the allegations in subpart (b)(vii) of paragraph 220, Defendants state that Spielmann was asked to follow the established review process, which had been approved by the FTA. Defendants deny the remaining allegations in subpart (b)(vii) of paragraph 220.

viii. Defendants deny the allegations in subpart (b)(viii) of paragraph 220.

c. Defendants lack sufficient information or knowledge to admit or deny the allegations in subpart (c) of paragraph 220 and on that basis deny them.

d. Defendants deny the allegations in subpart (d) of paragraph 220 of the Complaint.

i. In response to the allegations in subpart (d)(i) of paragraph 220, Defendants state that a former Council employee named Akua Asare worked on the audit team, reported to Matt LaTour, and reviewed—among other things—contracts with third-party appraisers hired to estimate the value of property being acquired for the Project.

ii. In response to the allegations in subpart (d)(ii) of paragraph 220, Defendants state that the contracts purportedly referenced in this subpart speak for themselves and deny any characterization thereof.

iii. Defendants lack sufficient information or knowledge to admit or deny the allegations in subpart (d)(iii) of paragraph 220 and on that basis deny them.

iv. Defendants lack sufficient information or knowledge to admit or deny the allegations in subpart (d)(iv) of paragraph 220 and on that basis deny them.

v. Defendants lack sufficient information or knowledge to admit or deny the allegations in subpart (d)(v) of paragraph 220 and on that basis deny them.

vi. Defendants lack sufficient information or knowledge to admit or deny the allegations in subpart (d)(vi) of paragraph 220 regarding a specific invoice in 2018 and on that basis deny them. Defendants specifically deny that Hollick ever became "visibly angry" and deny Plaintiff's other characterizations in this paragraph.

vii. Defendants lack sufficient information to admit or deny the allegations in subpart (d)(vii) of paragraph 220 and on that basis deny them.

viii. In response to the allegations in subpart (d)(viii) of paragraph 220, Defendants state that Asare raised concerns that appraisal contractors were submitting excessive bills to the Council. Defendants state that Matt LaTour, Chief Audit Executive, worked with Asare to improve documentation and the process for the selection of contractors.

ix. Defendants lack sufficient information or knowledge to admit or deny the allegations in subpart (d)(ix) of paragraph 220 and on that basis deny them. Defendants state that the purported "email chain" referenced in this paragraph speaks for itself and deny any characterization thereof.

x. In response to the allegations in subpart (d)(x) of paragraph 220, Defendants state that the PowerPoint referenced in this paragraph speaks for itself and deny any characterization thereof. Defendants deny the remaining allegations in subpart (d)(x) of paragraph 220, and specifically deny that LaTour "terminated the audit."

xi. In response to the allegations in subpart (d)(xi) of paragraph 220, Defendants state that, as part of its review, the Audit Department identified potential process improvements the Council could implement on future projects and presented those recommendations to the Audit Committee in a public meeting. Defendants deny the remaining allegations in subpart (d)(xi) of paragraph 220.

xii. In response to the allegations in subpart (d)(xii) of paragraph 220, Defendants state that Asare is no longer employed by the Council.

Defendants deny the remaining allegations in subpart (d)(xii) of paragraph 220.

221.    In response to the allegations in paragraph 221 of the Complaint, Defendants state that the referenced statute speaks for itself and deny any characterization thereof.

222.    Paragraph 222 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

223.    Paragraph 223 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

224.    Paragraph 224 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

225.    Defendants admit the allegations in paragraph 225 of the Complaint.

226.    In response to the allegations in paragraph 226 of the Complaint, Defendants state that the cited constitutional provision speaks for itself.

227.    Paragraph 227 of the Complaint contains a legal conclusion to which no response is required.  To the extent a response is required, Defendants state that Plaintiff privately communicated his alleged concerns to certain Council employees and otherwise lack sufficient information or knowledge to admit or deny the allegations.

228.    Defendants deny the allegations in paragraph 228 of the Complaint.

229.    Paragraph 229 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

230.    Paragraph 230 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

231.     Defendants admit the allegations in paragraph 231 of the Complaint.

232.     Defendants state that the constitutional provision cited in paragraph 232 of the Complaint speaks for itself.

233.     Paragraph 233 of the Complaint contains a legal conclusion to which no response is required.  To the extent a response is required, Defendants state that Plaintiff privately communicated his alleged concerns to certain Council employees and otherwise lacks sufficient information or knowledge to admit or deny the allegations.

234.     Paragraph 234 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

235.     Paragraph 235 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

236.     Paragraph 236 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

237.     Defendants deny that Plaintiff is entitled to any of the relief requested under "Request for Relief" in the Complaint.

238.     Defendants hereby demand a trial by jury.

## AFFIRMATIVE DEFENSES

1.     Plaintiff's Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

2.     Plaintiff has alleged no damages attributable to Defendants.

3.     Plaintiff failed to mitigate his damages, if any.

4.     Plaintiff's claims are barred by unclean hands.

48

5.      Defendant Hollick was not personally involved with much of the alleged conduct.

6.      Defendants at all times acted in good faith, in full compliance with applicable laws and regulations.

7.      Defendant Hollick is entitled to qualified immunity.

8.      Defendant Hollick is entitled to official immunity.

9.      The Council is immune from liability under the doctrines of vicarious official immunity and statutory immunity.

10.     Plaintiff lacks a private right of action to assert his state constitutional claim.

11.     Plaintiff failed to engage in good faith protected activity under Minnesota Statutes section 181.932.

12.     Plaintiff has not suffered an adverse employment action.

13.     The Council transferred Plaintiff for legitimate, nonretaliatory reasons having nothing to do with any alleged protected activity.

14.     Plaintiff's claims may be barred by any and all of the affirmative defenses contemplated by Rule 8(c) of the Federal Rules of Civil Procedure. Defendants incorporate all Rule 8(c) affirmative defenses to the extent Defendants cannot determine whether these affirmative defenses are applicable until Defendants have an opportunity to complete discovery.

15.     Defendants allege any other matter constituting an avoidance or affirmative defense.

16.     Defendants reserve the right to assert additional affirmative defenses as discovery continues.

WHEREFORE, Defendants pray that the Court grant judgment on the merits dismissing Plaintiff's Complaint, that Plaintiff take nothing therefrom, and that Defendants be awarded their costs, disbursements, and reasonable attorney's fees.

Dated:  December 6, 2023   **s/Susan E. Ellingstad**

Susan E. Ellingstad, MN #0243346
David J. Zoll, MN #0330681
R. David Hahn, MN #0401262
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave. South, Suite 2200
Minneapolis, MN  55401
Telephone:  (612) 339-6900
Fax:  (612) 339-0981
seellingstad@locklaw.com
djzoll@locklaw.com
rdhahn@locklaw.com

**ATTORNEYS FOR DEFENDANTS METROPOLITAN COUNCIL AND JOAN HOLLICK**